**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Albert M. LEFKOWITZ, Defendant-Appellant.**

**No. 79–1328.**

United States Court of Appeals, Ninth Circuit.

Jan. 31, 1980.

Rehearing Denied March 31, 1980.

---

See also, D.C., 464 F.Supp. 227.

Larry S. Flax, Los Angeles, Cal., Bruce I. Hochman, Beverly Hills, Cal., argued, for defendant-appellant; Richard L. Rosenfield, Flax & Rosenfield, Los Angeles, Cal., on brief.

Steven Kramer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY, CHOY and SCHROEDER, Circuit Judges.

CHOY, Circuit Judge:

Lefkowitz appeals from his convictions for various tax fraud offenses. He challenges the validity of the search warrants issued to search his home and his corporate offices, focusing on the failure of the supporting affidavit to disclose the identity of the IRS's secret informant: his estranged wife Helen. This failure, he says, prevented the magistrate from exercising an in-

formed, independent judgment in issuing the warrants and renders the affidavit insufficient to support a finding of probable cause. He further argues that the privilege against adverse spousal testimony or the confidential marital communications privilege prohibits the use of his wife as an informant. We affirm.

I. *Statement of the Case*

Lefkowitz was convicted after a bench trial on stipulated facts of violating 18 U.S.C. §§ 371 and 1001 and 26 U.S.C. §§ 7201, 7203 and 7206(1). He was sentenced to four years imprisonment and placed on three years probation to begin after his prison term.

Lefkowitz was the president of several related small corporations, most of them in the car rental/leasing business. On June 12, 1975, IRS agents went to the Lefkowitz corporate offices, told Lefkowitz that he and his corporations were under investigation for possible violations of the tax laws and served him with a summons calling for the 1971–74 books and records of the Lefkowitz corporations to be produced at the IRS offices on June 23, 1975.

Sometime during the next week Lefkowitz, his lawyer Babic and his accountant Fisher met in Lefkowitz's private office to discuss the impending IRS document inspection.[1] In response to Lefkowitz's concern over large cash shortages evidenced by the 1973 books for N/U Rent-A-Car, one of the Lefkowitz entities, Fisher jokingly suggested burning the books. The less drastic solution of rewriting the books was chosen, and a secret, separate office was rented in which Fisher could perform his cosmetic accounting.

On June 23, the three conspirators met with agents at the IRS offices and Babic represented that the records called for in the summons did not exist or had been lost or destroyed. The date of July 14, 1975 was set for the production of whatever records could be found by then.

---

1. Babic was convicted of conspiracy and of aiding and assisting the presentation to the IRS of fraudulent documents. 18 U.S.C. § 371, 26 U.S.C. § 7206(2). We today affirmed his convictions by memorandum in *United States v. Babic*, 614 F.2d 777 (9th Cir. 1980).

The next week Lefkowitz, with the help of his secretary Patricia Sullivan, Fisher, Mark Nestico (an employee) and Helen Lefkowitz, moved boxes of corporate records to Sullivan's apartment. On July 14, the IRS agents were given the then-completed spurious 1973 N/U Rent-A-Car records.

On November 7 and 10, 1975, IRS agents received information from a confidential source (later revealed to be Helen Lefkowitz). She told the agents about the falsified books and about the removal of the original records to Sullivan's apartment, and added that some of the original records had been moved back into the corporate offices after July 14, when the false N/U Rent-A-Car documents had been produced. She had seen these records in the corporate offices as late as mid-October.

On November 17, an IRS agent interviewed Nestico, who admitted that on Lefkowitz's instructions he had helped move some boxes of records from the Sullivan apartment to Lefkowitz's residence, where he had seen them as late as the end of October. Nestico also saw records in the corporate offices at the end of October.

On the basis of an affidavit by IRS agent Laffer reciting this and other information, search warrants were issued on November 17 for the Lefkowitz corporate offices and Lefkowitz's residence. The affidavit did not reveal that the secret informant was Helen Lefkowitz. Much of the evidence used to convict Lefkowitz was obtained through the execution of these warrants.

II. *The Nondisclosure that the Secret Informant Was Helen Lefkowitz*

 A. *The Facial Sufficiency of the Affidavit*

█ The threshold issue[2] is whether the affidavit provided the magistrate enough essential facts to enable her to exercise her independent judgment and perform her function as a "neutral and detached magistrate." *See United States v. Beusch*, 596 F.2d 871, 874 (9th Cir. 1979); *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *quoting Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

█ *Aguilar* announced a two-pronged test of the sufficiency of affidavits based on hearsay: first, the affidavit must provide information showing the reliability of the informant's information; second, the affidavit must provide information indicating the informant's credibility.

The affidavit here indicated that the informants had personally heard and observed that which they asserted. The first requirement, reliability, was therefore satisfied.

The affidavit here is replete with data indicating the informants' credibility: their information is firsthand, specific and highly detailed, thus it is "self-corroborating." *United States v. Banks*, 539 F.2d 14, 17 (9th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). Certain aspects of the information were independently corroborated by information already known to the IRS. *See United States v. Prueitt*, 540 F.2d 995, 1005 (9th Cir. 1976), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977). The information was given to the IRS in circumstances subjecting the informants to possible personal or penal risk. *See United States v. Wood*, 550 F.2d 435, 438 (9th Cir. 1976). In addition, Helen Lefkowitz's and Nestico's stories corroborated each other.

█ The affidavit is clearly sufficient on its face to support a finding of probable

---

**2.** The Government here renews its argument, unsuccessful below, that Lefkowitz lacks standing to challenge the search of his corporate offices. The Government correctly notes that Lefkowitz does not have standing merely because he was a corporate officer, *United States v. Britt*, 508 F.2d 1052, 1055–56 (5th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42 (1975), and that mere presence at a search does not automatically impart standing, *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Applying these rules, however, the court below nonetheless found that Lefkowitz had "a sufficient proprietary interest in the suite, which was the target of the search and where corporate records were seized, to impart standing." This finding is amply supported in the record.

cause. The information from the two hearsay sources satisfied both prongs of the *Aguilar* test.

### B. *The Challenge to the Affidavit*

Lefkowitz argues, however, that this court should look beyond the four corners of the affidavit and consider its sufficiency given Helen's identity and the accompanying credibility problems.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that in order to challenge an affidavit valid on its face, a defendant must show (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause.

Lefkowitz satisfies neither of these requirements.[3] He asserts no intent or recklessness in the omission of Helen's identity (in fact, Laffer swore that he offered the identity to the magistrate, who declined it). Moreover, even if the affiant had revealed Helen's identity, the affidavit still would have sufficed to support a finding of probable cause to issue search warrants.

True, Helen Lefkowitz was the estranged wife of the appellant and as such may have had motivation to contact the IRS other than a sense of civic duty. After being married for 23 years, appellant and Helen Lefkowitz separated in August 1975. Appellant began living with Sullivan, his secretary, in September 1975. Helen Lefkowitz contacted the IRS in November 1975. The Lefkowitzes were eventually divorced in 1977. Inferences of spite, vengeance, and perhaps a desire to obtain advantageous property settlement information via an IRS investigation might spring from this scenario. However, the district court expressly found that the magistrate could have found Helen credible even considering her identity, and thus the affidavit would support a finding of probable cause even if the omission was cured. This is not, therefore, a case like *United States v. Esparza*, 546 F.2d 841 (9th Cir. 1976), where the misinformation was crucial to the finding of probable cause; rather, it is more like *United States v. Taxe*, 540 F.2d 961, 967 (9th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977), where omissions from an affidavit were deemed immaterial. The district court's determination here was not clearly erroneous.

The nondisclosure of Helen Lefkowitz's identity does not require us to look beyond the four corners of the facially valid affidavit under the *Franks v. Delaware* test. Even considering her identity, she could still be found a credible informant.[4]

### III. *The Privilege Against Adverse Spousal Testimony and the Confidential Marital Communications Privilege*

Although Lefkowitz confuses these privileges, they are distinct.[5] *See United States v. Bolzer*, 556 F.2d 948, 951 (9th Cir. 1977). The first can be invoked to prevent one spouse from testifying against the other.[6] *E. g., Hawkins v. United States*, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958). The second can be invoked to prevent the disclosure of confidential communications

---

3. We assume, without deciding, that the *Franks* rationale also permits an attack on search warrants obtained by affidavits marred by *omissions* of facts required to prevent technically true statements in the affidavit from being misleading.

4. Lefkowitz's argument that the affidavit fails to support a finding of probable cause that a federal offense had been committed is frivolous. Even if Helen's information were to be disregarded, the affidavit was replete with information from the IRS's own files and investigations which showed that tax offenses had been committed.

5. The Federal Rule of Evidence with respect to privileges applies to proceedings for the issuance of search warrants. Fed.R.Evid. 1101(c), (d).

6. This privilege is sometimes called the "anti-marital facts" privilege. *E. g., United States v. Bolzer*, 556 F.2d 948, 951 (9th Cir. 1977). This term is descriptively inaccurate and perhaps contributes to the confusion of the two privileges. We shall therefore refer to the first privilege as the privilege against adverse spousal testimony.

arising out of the marital relationship. *E. g., Blau v. United States,* 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951).

■ The privilege against adverse spousal testimony is of no use to Lefkowitz here because his wife did not "testify" against him, but provided information used to support the issuance of a search warrant. *See United States v. Mendoza,* 574 F.2d 1373, 1379 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978) (introduction of co-conspirator wife's taped statements did not violate the privilege against adverse spousal testimony, "because Mrs. Mendoza did not testify at trial"). Moreover, this privilege does not preclude the use of a wife's statements against a defendant husband at trial when they are testified to by a third person. *United States v. Tsinnijinnie,* 601 F.2d 1035 (9th Cir. 1979). Here, Helen Lefkowitz did not personally appear before the magistrate; her information was recited in the affidavit of a third person. Therefore, the privilege did not bar this use of her statements.

■ The confidential marital communications privilege is also unavailable to Lefkowitz. It applies only to utterances or expressions intended to be communicative (*i. e.,* to convey a message from one spouse to the other) *and* confidential. *United States v. Lustig,* 555 F.2d 737, 748 (9th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978).

The information Helen Lefkowitz provided to the IRS concerned the following facts: (1) the records turned over to the IRS were fraudulent; (2) the original records were removed from the corporate offices; (3) some of these records were moved to Sullivan's apartment; and (4) some of the origi-

nal records were later moved back into the corporate offices (where they eventually were seized).[7]

Her information that the records given to the IRS were false and that some of the original records were moved back into the corporate offices and remained there was based on her personal observations. There was no communicative utterance or expression by her husband and therefore her divulgence of this information did not violate the confidential marital communications privilege. *See United States v. Bolzer,* 556 F.2d at 951.

The original records were removed from the corporate offices in the presence, and with the assistance, of Sullivan, Fisher and Nestico. Even assuming such actions were communicative, *see generally United States v. Lewis,* 140 U.S.App.D.C. 40, 44–45, 433 F.2d 1146, 1150–51 (D.C. Cir. 1970), the presence of others destroys confidentiality and renders the privilege inapplicable. *See Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Lustig,* 555 F.2d at 748.

The only information based on a communication by Lefkowitz and arguably intended as confidential was that some records were moved to Sullivan's apartment. This piece of information can easily be disregarded without impairing the sufficiency of the affidavit. Nestico, the other informant relied on in the affidavit, provided essentially the same information, stating that he personally moved boxes of records, of a description strikingly similar to Mrs. Lefkowitz's description of the boxes of records she helped move, from Sullivan's apartment to the Lefkowitz residence.[8] The fact that

---

7. Nestico, not Mrs. Lefkowitz, asserted that some of the records were to be found in the Lefkowitz residence. His information suffers from no infirmity. *See* note 8 *infra,* and accompanying text.

8. Because we reject *infra* Lefkowitz's argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential mari-

tal communications privilege would in any way be "tainted." *See generally Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Even assuming that some version of a "taint" theory were independently applicable to violations of this privilege, it is clear that in this case Nestico, the secondary source, was discovered by the IRS on the basis of statements by Helen Lefkowitz that were outside the protection of any marital privilege, *e. g.,* the statement that Nestico helped move boxes of records from the corporate offices.

these records were ever in the Sullivan apartment, moreover, was not essential, because that apartment was never searched. The nature of these records was sufficiently demonstrated to the magistrate by the fact that Lefkowitz had warned Nestico not to tell anyone about them. The affidavit was therefore sufficient even disregarding Helen Lefkowitz's and Nestico's information about the Sullivan apartment.

Thus, neither the privilege against adverse spousal testimony nor the confidential marital communications privilege precluded the use of any facts obtained from Helen Lefkowitz which were essential to the sufficiency of the affidavit.

 Lefkowitz finally contends that these marital privileges are somehow grounded in various constitutional amendments and implement a constitutionally-protected right of marital privacy. These privileges, however, do not have constitutional underpinnings. *United States v. Doe*, 478 F.2d 194 (1st Cir. 1973).

## IV. *Conclusion*

The nondisclosure of Helen Lefkowitz's identity as the IRS's secret informant was not fatal to the affidavit. The privileges against adverse spousal testimony and of confidential marital communications do not preclude the use of any information essential to the sufficiency of the affidavit. Therefore, the search warrants were properly issued.

AFFIRMED.