**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Ray ROBERSON,**
**Defendant–Appellant.**

**No. 87–3138.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1988.

Decided Oct. 20, 1988.

William R. Michelman, Tacoma, Wash. for defendant-appellant.

Mark N. Bartlett, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT, WALLACE and HUG, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This appeal presents the question whether a husband or wife may invoke the marital communications privilege when, at the time of the relevant communication, the couple is separated and their marriage has failed.

Thomas Roberson was tried and convicted under 18 U.S.C. § 2031 of a rape that took place on a federal enclave. At trial, the prosecution offered the testimony of his estranged wife. Roberson objected, asserting the marital communications privilege. After an offer of proof and arguments by counsel, the court refused to allow the privilege. We affirm.

## BACKGROUND

Thomas and Rosie Roberson had been separated two months when he called and told her that he raped and choked Judy Gonzalez. He did not call to seek spousal forgiveness or understanding, but to alert her that she might need to move. He anticipated the possibility of a jail sentence from his conduct on the previous night and that the sentence would prevent him from continuing regular house payments.

Two months earlier, Thomas Roberson, who here seeks to invoke the marital privilege, had instituted an action for dissolution of the marriage and moved out of the home he shared with his wife. Near that time, Mrs. Roberson obtained a temporary restraining order preventing him from visiting the house or physically contacting her. No discussion of reconciliation took place between the time of the separation and the conversation. Mr. and Mrs. Roberson did, however, discuss property division in anticipation of the marriage dissolution.

During the offer of proof, Mrs. Roberson testified that their marriage had failed before he called and admitted his criminal conduct. He did not refute her testimony.

Judge Bryan considered the application of Federal Rule of Evidence 501. He recognized the admission by Roberson as a significant factor in the search for truth, saying:

That [Rule] makes it important in reviewing these cases and considering the issue at hand to apply reason and experience and to consider, since this is a common law privilege, ... the reasons for it and purposes of the privilege and whether those purposes would be furthered here with the privilege or not.

After considering the Robersons' pending divorce action, the temporary restraining order, the property settlement discussions, the testimony of Rosie Roberson and the motivations behind the communication, the judge concluded the marriage had failed. He said:

It appears from Mrs. Roberson's testimony that this was in fact, at the time of this call, a defunct marriage, except in law. There was no ongoing discussion about reconciliation, there were no attempts being made, nor apparently have any been made since, and it was really just a marriage that was over.

The judge balanced the significance of the privilege, the reasons for it and its effect on the investigation of truth.

[H]ere the privilege ... the defendant wishes to invoke, does not have a higher-than-truth value, in my judgment. I think, in light of Rule 501 and the case law, that this is a balancing act that the court has to enter into....

The district judge also heard testimony that the Robersons subsequently were divorced. He did not consider it in his determination.

## DISCUSSION

The judge applied a balancing test and appropriately concluded that the marital privilege no longer applied. He correctly made his determination based only on the evidence of separation and irreconcilability at the time of the conversation.

On appeal, Roberson argues that his marriage was still valid under Washington law at the time of the conversation. His argument misses the point. In this federal criminal case, we apply Federal Rule of Evidence 501:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States *in the light of reason and experience.*

Fed.R.Evid. 501 (emphasis supplied); *see In re Fischel*, 557 F.2d 209, 211 (9th Cir.1977) (Federal, not state, law governs the attorney-client privilege in a federal criminal proceeding.); Fed.R.Crim.P. 26.[1] The application of the privilege in a civil proceeding, in a state court or in another tribunal does not concern us.

Applying "reason and experience," federal courts construe evidentiary privileges narrowly. *E.g., Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (marital facts privilege). Privileges obstruct the search for truth. *Id.; United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987), *modified*, 842 F.2d 1135 (9th Cir.1988), *petition for cert. filed* ("... like the attorney-client privilege, the marital communications privilege is 'an obstacle to the investigation of the truth ... [that] ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.' ") (*quoting* Wigmore, *Evidence* § 2291 (McNaughton rev. 1961)). A valid marriage under state law is a necessary prerequisite for the privilege, *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978), but other considerations may negate it, *see United States v. Byrd*, 750 F.2d 585, 594 (7th Cir.1984) (proof of permanently separated status renders marital communications privilege inapplicable).

### 1. *Case Law*

We begin with *Wolfle v. United States*, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617

---

**1.** "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise

provided by ... the Federal Rules of Evidence...."

(1934). The Supreme Court held a statement contained in a letter from a husband to his wife outside the marital privilege. *Id.* at 12, 17, 54 S.Ct. at 279, 281. The husband had dictated the letter to a stenographer who transcribed it. *Id.* at 12, 54 S.Ct. at 279.

The privilege suppresses relevant testimony. For this reason, the Court limited the privilege to those whose participation it reasonably requires. *Id.* at 16–17, 54 S.Ct. at 281. Since a husband and wife may communicate without a stenographer, the Court refused the privilege. *Id.* at 16, 54 S.Ct. at 281.

While discussing the policy behind the marital privilege, the Court employed a balancing of conflicting interests. Said the Court:

> [t]he basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.

*Id.* at 14, 54 S.Ct. at 280.

Recently, two circuits have applied a similar balancing approach to deny the privilege in circumstances similar to this case. In *United States v. Byrd*, 750 F.2d 585, 592 (7th Cir.1984), the court held that the privilege does not apply where the communications occur between permanently separated spouses.

A jury convicted Byrd of arson and conspiracy to commit arson. *Id.* at 587. He appealed, arguing principally that the trial court should have excluded testimony about his communications with his estranged wife. *Id.*

The evidence indicated the couple was permanently separated. Byrd and his wife were married eight years before their separation. *Id.* at 588. They had been separated about a year at the time of the communication. *Id.* His wife had purchased her own home after the separation but allowed him to use the basement as a workroom. *Id.* Prior to the challenged conversations, she received information that he had raped

her sister. *Id.* n. 1. Mrs. Byrd filed for divorce before the trial. *Id.* at 588.

The court concluded that the importance of the search for truth in a criminal trial outweighs the interest in protecting a permanently separated couple's confidentiality. *Id.* at 593. Although confidentiality might save some troubled marriages, the court rejected this purpose as too speculative to justify hampering the truth-finding process. *Id.* Through this process of balancing interests, *Byrd* established a categorical rule that proof of permanently separated status at the time of the communication renders the privilege inapplicable. *Id.* at 594; *see also United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir.1987) ("[T]he court [in *Byrd*] adopted a 'categorical' rule.").

The court deciding *In re Witness Before Grand Jury* agreed with *Byrd*'s limitation of the privilege. 791 F.2d 234, 238 (2d Cir.1986). Asserting the marital privilege, Geneva Carter, a witness before a federal grand jury, refused to answer questions about her estranged husband, Robert Carter. *Id.* at 235. The court of appeals reversed and remanded the district court decision which had upheld her refusal. *Id.*

Geneva Carter had been married to Robert Carter for 23 years, but had not lived with him for eleven. *Id.* During the eleven year separation, Mr. Carter fathered a child by another woman with whom he lived and represented as his wife. *Id.* at 235, 238.

Although the Second Circuit in *Grand Jury* applied *Byrd*'s analysis, that court modified the rigid requirement of permanent separation. It quoted from *Byrd* with approval:

> [s]ociety's interest in protecting the confidentiality of the relationships of permanently separated spouses is outweighed by the need to secure evidence in the search for truth....

*Id.* at 238 (*quoting United States v. Byrd*, 750 F.2d at 594). The court indicated the duration of the physical estrangement as the guiding factor in determining "permanent separation." 791 F.2d at 238. However, "either party may bring forward spe-

cial circumstances that render more or less likely the objective possibility of reconciliation at the time of the communications...." *Id.*

Other circuits have similarly balanced these interests and adopted other exceptions to the privilege. In *United States v. Sims,* the court recognized an exception to the marital privilege, concluding that discovering the truth about criminal activity outweighed protecting the privacy of marriage. 755 F.2d 1239, 1243 (6th Cir.1985). The case involved communications associated with criminal activity by a husband and wife. *Id.* at 1240 ("joint participants" exception).

Daniel Sims and his wife, Denise, participated in a scheme to defraud insurance companies through the use of the mails. *Id.* The couple submitted insurance claims for deliberately set fires that damaged their home and place of business, for staged burglaries and automobile accidents, and for nonexistent personal injuries. *Id.* Denise Sims testified in exchange for dismissal of the mail fraud charges against her. *Id.* Mr. Sims appealed his bench trial conviction of mail fraud, asserting the marital privilege. *Id.* at 1239–40.

After balancing the interests involved, the court limited the "joint participants" exception to those conversations between a husband and wife pertaining to patently illegal activity. *Id.* at 1243. It limited the exception to protect the privacy of marriage and encourage open and frank marital communications. *Id.* In its discussion, the court cited decisions from other circuits applying the balancing approach in similar situations. *See id.* at 1241–43 (*citing United States v. Kahn,* 471 F.2d 191 (7th Cir. 1972), *rev'd on other grounds,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974)); *United States v. Mendoza,* 574 F.2d 1373 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978). *See also United States v. Parker,* 834 F.2d 408, 411 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1118, 99 L.Ed.2d 279 (1988); *cf. United States v. Brown,* 605 F.2d 389, 396 (8th Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979) ("The higher-than-truth value served by the privilege ... is the protection of the marital bond.")

### 2. Analysis

We balance society's interest in the search for truth and administration of justice with society's interest in the confidentiality of marriage. This determines how narrowly to construe the marital privilege.

In a criminal case, society has a particularly strong interest in the search for truth and the administration of justice. A balancing approach also requires us to examine carefully the interest the marital privilege seeks to foster.

 The marital privilege exists to insure that spouses generally feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law. *United States v. Byrd,* 750 F.2d at 590. It does not directly protect the couple's privacy. *See id.* at 590, 592. The inquiry for the purpose of balancing interests should address the interest society has in preserving the confidentiality of marital partners generally. It does not concern the confidentiality of the couple before the court. In contrast, the related "marital facts" privilege looks forward with reference to the one marriage at hand and advances that privacy interest. *See id.* at 590.

As the *Byrd* court concluded as to permanently separated couples, society has little interest in protecting the confidentiality of separated couples whose marriage has failed by the time of the communication. *See id.* at 593. The need for truth outweighs this interest. *Id.*

 We decline to frame a categorical rule governing the application of the marital privilege to failing marriages. Yet, a totally unrestricted approach may involve district judges in difficult and sometimes inappropriate inquiries. *See United States v. Fulk,* 816 F.2d at 1205 ("[T]he *Byrd* court declined to involve the courts in such a difficult factual inquiry by refusing to adopt a 'deteriorating marriage' standard...."); *In re Witness Before Grand*

*Jury,* 791 F.2d at 238 n. 2 ("It might well be burdensome for a district court to consider such a dilemma...."); *cf. United States v. Sims,* 755 F.2d at 1243 n. 3 ("We do not believe that courts can or should 'assess the social worthiness of particular marriages or the need of particular marriages for the protection of the privilege.' ") (*quoting Appeal of Malfitano,* 633 F.2d 276, 279 (3d Cir.1980)).

■ We follow an approach similar to that adopted by the Second Circuit. *See In re Witness Before Grand Jury,* 791 F.2d at 238–39. The district court must first find that the husband and wife have been separated at the time of the communication. *See id.* (requiring "separation inquiry" by the district court). If the couple has been separated, the court should undertake a more detailed investigation into the irreconcilability of the marriage. It should consider all other relevant circumstances, including the duration of the separation and the stability of the marriage at the time of the communication. *See id.* at 238; *compare United States v. Byrd,* 750 F.2d at 594 (categorical rule of "permanent separation").

In making a determination regarding irreconcilability, the district court should consider whether, at the time of the communication, a divorce action had been filed and the subsequent relationship of the parties prior to the communication. The judge may wish to hear testimony and may consider documentary evidence such as the divorce pleadings or a settlement agreement. For example, substantially supported allegations of gross misconduct or grievances over a period of time or a proposal for property settlement may distinguish the failed marriage from the occasional disharmony that sometimes accompanies these relationships. Other useful evidence would include statements by either party regarding irreconcilability or the reasons for a prolonged absence from the home. From this evidence and for the record, the trial judge should make a factual determination about the separation and irreconcilability of the couple.

We find it hard to agree with the rigid approach adopted by the Seventh Circuit in *Byrd.* A federal district judge confronted with this situation should first resolve whether a separation exists and then consider all relevant additional factors. Having found the couple separated, the court should proceed as did Judge Bryan by considering all factors to determine whether, at the time of the communication, the couple contemplated reconciliation or had abandoned all hope.

We distinguish our prior decisions allowing the privilege. *See In re Grand Jury Investigation of Hugle,* 754 F.2d 863, 865 (9th Cir.1985); *United States v. Lefkowitz,* 618 F.2d 1313, 1318 (9th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). These cases involve estranged couples.

*Hugle* dealt with a grand jury's investigation of espionage charges. 754 F.2d at 864. Hugle sought a protective order from the district court after learning that the United States Attorney planned to call his estranged wife to testify. *Id.* He appealed the district court's denial of his request. *Id.*

This court reversed concluding that the privilege applies to an existing, albeit disharmonious, marriage. *Id.* at 865. Although the couple was estranged, the district court made no factual findings of a defunct marriage or permanent separation. Here, we have the necessary findings. In *Hugle* the privilege seemed to apply, but we remanded for further inquiries regarding its applicability to the anticipated testimony. *Id.*

Nor does our holding in *United States v. Lefkowitz* conflict with the result today. Lefkowitz appealed his conviction for tax fraud by challenging the validity of the search warrant. 618 F.2d at 1315. The IRS used his estranged wife as the informant. *Id.* Lefkowitz argued that the privilege rendered the affidavit insufficient to support a finding of probable cause. *Id.*

The court held that most of the information his wife provided was not a confidential communication, utterance or expression. *Id.* at 1318. It determined that the

remaining information was not essential to the sufficiency of the affidavit. *Id.* It did not need to address whether the separation and the irreconcilability of the marriage at the time of the communication removed the privilege.

*CONCLUSION*

The trial judge applied the correct analysis in determining the applicability of the marital privilege and his findings are not clearly erroneous. The evidence supports the finding that the marriage was defunct. The parties did not dispute the fact of separation. The trial judge correctly held Roberson's statements to his wife admissible.

AFFIRMED.