983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel LIBUTTI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel LIBUTTI, Defendant-Appellant.
 Nos. 89-50570, 91-50865.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Dec. 9, 1992.
Decided Jan. 6, 1993.
 
 Before CANBY, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Miguel Libutti appeals his conviction, after a jury trial, of one count of conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute 437 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 
 3
 Libutti raises seven issues on appeal. He contends: (1) the district court erred by denying his motion to suppress the evidence of 437 kilograms of cocaine obtained from a warrantless search of a van because codefendant Keene never consented to the search and the police lacked probable cause to search; (2) the district court denied him a fair trial by making hostile comments and by remarking in front of the jury that he was connected with drugs; (3) the district court violated the marital communications privilege when it allowed Libutti's separated wife to testify against him; (4) the district court erred in refusing to give a requested jury instruction concerning Libutti's claim he was disposing of the cocaine; (5) the government failed to advise Libutti that Casey Marvell, a key government witness, had been hospitalized for alcohol abuse in November 1988 and this resulted in a Brady violation requiring either dismissal or a new trial; (6) the district court abused its discretion by denying Libutti's second motion for a new trial based on the newly discovered evidence of Marvell's hospital records; and (7) the government's conduct was so outrageous that dismissal is compelled.
 
 DISCUSSION
 1. Motion to Suppress Evidence
 
 4
 A district court's determination whether a search was voluntarily consented to depends on the totality of circumstances and is a question of fact reviewed under the clearly erroneous standard. United States v. Kelley, 953 F.2d 562, 566 (9th Cir.1992).
 
 
 5
 The district court found that Keene voluntarily consented to the search of the van. The court stated, "[H]e [Detective Searle] asked him [Keene] permission to look at the van.... [H]e was given permission to do it." G.E.R. 35. The evidence supports this finding. At the suppression hearing Keene testified that he told Searle where the van was "because I finally realized, well, he might be a policeman. Might want to go into the van." G.E.R. 24. Searle testified that his gun remained in his waistband when he asked Keene if he could look at the van, and "[Keene] said, go ahead. It's over anyway." G.E.R. 25-26.
 
 
 6
 The district court's finding that Keene consented to the warrantless search of the van is not clearly erroneous. The district court did not err in denying the motion to suppress.[1]
 
 2. Judicial Misconduct
 
 7
 "A federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). "A trial judge is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." Id. "A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." Id.
 
 
 8
 Libutti contends that the judge denied him a fair trial by commenting in front of the jury that Marvell was rewarded for "blowing the whistle" on Libutti and "his connection with the drugs." Defense counsel responded, "Well, his alleged connection, Your Honor, I assume, you mean." The judge said, "Of course." E.R. 199-200.
 
 
 9
 We have previously stated that a claim of judicial misconduct failed because, "[u]pon defense counsel's objection, the judge cured any harm by acknowledging the correctness of the objection." Laurins, 857 F.2d at 538. That is what occurred here.
 
 
 10
 Libutti also contends the judge denied him a fair trial by making hostile comments throughout defense counsel's entire cross-examination of Marvell. See E.R. 57-230. We have reviewed the relevant transcript, and conclude that the questions and comments by the trial judge were legitimate efforts to clarify issues and evidence in the case. There was no judicial misconduct.
 
 3. Marital Communications Privilege
 
 11
 A district court's ruling on the scope of a privilege involves a mixed question of law and fact, and is reviewable de novo. See United States v. Zolin, 809 F.2d 1411, 1417 (9th Cir.1987), modified on other grounds, 842 F.2d 1135 (9th Cir.1988), vacated in part on other grounds, 491 U.S. 554 (1989); In re Grand Jury Investigation, 974 F.2d 1068, 1073 (9th Cir.1992). Where the relevant scope of the privilege is clear and the decision the district court must make is essentially factual, however, a district court's rulings as to the privilege are reviewed for clear error. Zolin, 809 F.2d at 1417. See also United States v. Roberson, 859 F.2d 1376, 1381 (9th Cir.1988).
 
 
 12
 To determine the scope and application of evidentiary privileges in federal criminal cases, we look to federal common law. See United States v. Marashi, 913 F.2d 725, 729 (9th Cir.1990); Fed.R.Evid. 501. Federal common law recognizes two separate privileges arising out of the marital relationship. The first, the privilege against adverse spousal testimony, is not raised on appeal by Libutti. The second, the confidential marital communications privilege, bars testimony concerning statements privately communicated between spouses before the couple is separated and irreconcilable, and may be invoked by the non-testifying spouse even after dissolution of the marriage. Marashi, 913 F.2d at 729. Libutti contends the confidential marital communications privilege should have prevented his separated wife, Marvell, from testifying against him because the couple allegedly reconciled before the trial.
 
 
 13
 We reject Libutti's claim of the marital communications privilege because he does not point to any specific confidential communications to which his wife testified in violation of the privilege. "The burden of demonstrating the existence of an evidentiary privilege rests on the party asserting the privilege." Zolin, 809 F.2d at 1415. See also United States v. Abrahams, 905 F.2d 1276, 1282 (9th Cir.1990) (it is incumbent upon party asserting the privilege to make a particular assertion with respect to each specific category of information the party claims is privileged).
 
 
 14
 Libutti has failed to specify which conversations were confidential. Moreover, we have independently reviewed the record and it does not reveal any testimony by Marvell about any confidential communications she had with Libutti.
 
 
 15
 Finally, any confidential communication Marvell may have had with Libutti after March 18, 1988 would not be privileged because the district court conducted the necessary Roberson hearing and its determination of the irreconcilability of the separated couple was not clearly erroneous. See R.T. 5/24/89 at 16, 74; 5/25/89 at 12 (court corrected the date the couple became irreconcilable as March 18, 1988, not August 18, 1988); Roberson, 859 F.2d at 1381.
 
 4. Jury Instructions
 
 16
 Libutti contends the district court erred by refusing to give a jury instruction addressing his theory that he did not possess the cocaine with intent to distribute it, but rather he was trying to dispose of it. See A.O.B. at 57. The ultimate issue is whether "other instructions, in their entirety, adequately cover [Libutti's] defense theory." United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992) (quoting United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990)). This is a question of law and is reviewed de novo. Id.
 
 The district court instructed the jury:
 
 17
 In determining whether the cocaine was possessed with intent to distribute, in contrast to being possessed for personal use, you may consider all the surrounding circumstances....
 
 
 18
 R.T. 6/7/89 at 206. The trial judge stated that he would allow defense counsel to argue that "personal use" means "to dispose." R.T. 6/6/89 at 11. Defense counsel indicated he understood the defense theory of disposal could be argued under the intent element:
 
 
 19
 The Court: But he [the prosecutor] can argue it wasn't for disposal; it was
 
 
 20
 meant to be sold to somebody else. You [defense counsel] can
 
 
 21
 argue, no, he put it there for disposal; so that's under
 
 
 22
 personal use.
 
 
 23
 Mr. But he can't argue that if he's [Libutti] going to discard it,
 
 
 24
 Tegtmeier: that's still with intent.
 
 
 25
 The Court: No. If he had intent to discard it, he didn't have intent to
 
 
 26
 distribute it.
 
 
 27
 Mr. Tegtmeier: Correct......
 
 
 28
 R.T. 6/6/89 at 25.
 
 
 29
 Because the district court's jury instructions adequately covered Libutti's theory, the court properly declined to give the jury instruction he requested.
 
 5. Brady Material
 
 30
 We review de novo challenges to a conviction based on a Brady violation. United States v. Brumel-Alvarez, No. 89-50412, slip op. at 11666 (9th Cir. Sept. 29, 1992); Brady v. Maryland, 373 U.S. 83, 87 (1963). Brady violations will cause reversal if there is "a reasonable probability that the suppressed or false evidence affected the verdict." Brumel-Alvarez, slip op. at 11666; United States v. Gillespie, 852 F.2d 475, 481 (9th Cir.1988). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Kennedy, 890 F.2d 1056, 1058-59 (9th Cir.1989), cert. denied, 494 U.S. 1008 (1990).
 
 
 31
 The government has a duty to disclose to a defendant information that is favorable to an accused "where the evidence is material either to guilt or punishment." United States v. Bagley, 473 U.S. 667, 683 (1985); Brady, 373 U.S. at 87; Kennedy, 890 F.2d at 1058. Brady information includes "material ... that bears on the credibility of a significant witness in the case," Brumel-Alvarez, slip op. at 11676, and evidence impeaching the testimony of a government witness when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972); Brumel-Alvarez, slip op. at 11671.
 
 
 32
 Libutti contends the government's failure to advise him of Marvell's hospitalization for alcohol abuse in November 1988 constitutes a Brady violation that warrants dismissal or a new trial. The government admits that it had knowledge of Marvell's hospitalization for alcohol abuse in November 1988, and that it did not disclose this information. See Red Brief at 28.
 
 
 33
 By itself, Libutti's knowledge of Marvell's hospitalization for alcohol abuse in November 1988 would not likely have affected the outcome of the trial because information had been presented to the jury regarding Marvell's drinking problems in November 1988 and her prior hospitalizations for drug problems. E.R. at 135, 148, 165. Libutti contends, however, that had he known of Marvell's hospitalization, he would have obtained her hospital records for November 1988. See E.R. 352-443. The hospital records for this period would have shown that Marvell perjured herself on the witness stand. She testified, "[T]here was one time I did drugs after my son was born [in 1986].... Just one time." E.R. 135. The hospital records show that Marvell tested positive for drugs and cocaine metabolites in November 1988. See Blue Brief at 30-32.
 
 
 34
 The government argues that nondisclosure of the hospital records does not undermine confidence in the outcome of the trial because Libutti was implicated not only by Marvell's testimony, but also by the physical evidence of 437 kilograms of cocaine that was introduced into evidence, the testimony of various police officers regarding their surveillance observations, including the observation that Keene drove a van filled with cocaine from Libutti's garage, and the incriminating testimony of Keene.
 
 
 35
 Keene testified he had been getting cocaine from Libutti for resale for five or six years. R.T. 6/2/89 at 5-7. He also testified he had personally been in the loft of the garage of Libutti's house with Libutti a half dozen times when kilos of cocaine were in the loft, and that he and Libutti had gone to the loft to get cocaine for Keene to deliver. R.T. 6/2/89 at 7-9. Keene further testified that on February 14, 1989, he was moving the cocaine pursuant to Libutti's instructions. R.T. 6/2/89 at 7. Keene testified:
 
 
 36
 Q. Yeah, because you were only taking those drugs out of that garage to get rid of them, weren't you?
 
 
 37
 A. Exactly.
 
 
 38
 Q. And you knew that what Miguel [Libutti] had asked you to do was to get those drugs out of the garage so that you could get rid of the drugs?
 
 
 39
 A. Yes.
 
 
 40
 R.T. 6/2/89 at 43.
 
 
 41
 Q. And the only directions that you were given was to take that van there and get out of it, and get away from there, is that correct?
 
 
 42
 A. Exactly.
 
 
 43
 R.T. 6/2/89 at 48.
 
 
 44
 Q. Who told you where to leave the van?
 
 
 45
 A. Miguel.
 
 
 46
 Q. Who told you where to leave the keys in the van when you left the van?
 
 
 47
 A. Miguel.
 
 
 48
 Q. And did Miguel tell you where he would be after you dropped the van at the place where he told you to leave it?
 
 
 49
 A. Yes.
 
 
 50
 Q. Where did he tell you he would be?
 
 
 51
 A. He would be at the Aku-Aku Motel.
 
 
 52
 Q. Where is the Aku-Aku Motel in relation to the parking lot where you dropped the van?
 
 
 53
 A. Across the street.
 
 
 54
 R.T. 6/2/89 at 86.
 
 
 55
 Given the other evidence against Libutti, we conclude that even if the information that Marvell was hospitalized in November 1988 had been known to Libutti, and even if Libutti obtained the hospital records of Marvell and discredited her as a witness, the outcome of the trial would not have been different. Accordingly, the government's wrongful failure to disclose Brady material does not warrant dismissal or a new trial.
 
 
 56
 6. Second Motion for New Trial--Newly Discovered Evidence
 
 
 57
 Denial of a motion for a new trial based on newly discovered evidence is reviewed for abuse of discretion. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 113 S.Ct. 258 (9th Cir.), cert. denied, 113 S.Ct. 258, ---- U.S. ----, 121 L.Ed.2d 189 (1992). The defendant must: (1) allege facts from which the court may infer diligence on the defendant's part and show from the motion that the evidence relied on is (2) newly discovered, (3) not merely cumulative or impeaching, (4) material to the issues involved, and (5) in a new trial probably would produce an acquittal. Reyes-Alvarado, 963 F.2d 1184, 1188.
 
 
 58
 Libutti's second motion for a new trial was based on the newly discovered evidence of Marvell's hospital records. As we noted above in the context of discussing the Brady violation, even if the hospital records had been disclosed, the outcome of the trial would have been the same. Applying this analysis to Libutti's second new trial motion, we conclude that the district court did not abuse its discretion in denying the motion.
 
 7. Outrageous Government Conduct
 
 59
 Libutti's final argument, that the "appalling facts of this case compel dismissal," is meritless.
 
 
 60
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not reach the question whether the police had probable cause to search the van