[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-14867

_____

D.C. Docket No. 99-CR-57-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONNA SINGLETON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(August 8, 2001)**

Before CARNES and MARCUS, Circuit Judges, and PROPST\*, District Judge.

_____

\* Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

PER CURIAM:

Donna Singleton (appellant) was indicted on three counts of making false statements to a federally-insured credit union (Title 18 U.S.C. §1014). The jury convicted her on June 30, 1999 of all three counts. She raises two issues on appeal. She contends: (1) that the district court erred by refusing to apply the marital communications privilege to a conversation between the appellant and her then-husband Cedric Singleton (Cedric); and (2) that the district court erred by allowing the jury to consider the testimony of witness Sonya White concerning alleged statements of the appellant, when White was ambivalent as to whether she had heard the statements directly from the appellant or whether she heard other(s) quote the appellant.

Facts[1]

The appellant and Cedric began living together in 1992 and were married in January 1995. The marriage was a rocky one involving, during the marriage, allegations of adultery by both partners and physical altercations. Prior to December 1996, appellant filed charges of domestic abuse against Cedric, which resulted in his being jailed. The parties separated in December 1996 after another

---

1 The underlying facts with regard to the commission of the three offenses are not directly at issue. We will summarize the facts related to the stated issues. Additional facts will be stated, infra, with regard to a motion in limine hearing regarding the marital communications privilege.

2

physical altercation involving appellant's boyfriend, Earl Davis. A petition for divorce was filed by appellant in September 1997. The divorce became final in May 1998.

In December 1997, Cedric was visiting his daughter at appellant's residence. While there, he searched for papers related to a prior divorce from another woman, and found documents that indicated that appellant had filed the false loan applications for which she was eventually convicted. In January 1998, he took the documents to the FBI. He agreed with the FBI to wear a recording device and to tape a conversation with appellant. Cedric met the appellant at a restaurant on January 29, 1998. During the taped conversation, appellant made incriminating statements. After the taped conversation, the FBI questioned appellant and obtained her consent to search her residence, where other incriminating evidence was found.

Over the appellant's objection, the taped conversation with Cedric and testimony concerning it were admitted at trial. The prosecution also called Sonya White as a witness. White testified that appellant told her that appellant had obtained loans based upon false documents. She also stated, however, that she may have heard about the loans from other co-worker(s). In her own testimony at the trial, the appellant first denied that she had falsified the loan documents, but, on

3

cross-examination, recanted and acknowledged that she had forged, altered, and submitted inaccurate loan applications, supporting documents, and income statements.

## Marital Privilege

Appellant's first issue is one of first impression in this circuit. It arises out of the admission into evidence of the conversation taped while the Singletons were married, but separated, and testimony concerning it. There are two recognized types of marital privilege: the marital confidential communications privilege and the spousal testimonial privilege. Trammel v. United States, 445 U.S. 40, 50-51 (1980). The marital privilege asserted by the appellant is marital communications privilege, which has been recognized by this court. United States v. Entrekin, 624 F.2d 597, 598 (5th Cir. 1980); United States v. Mendoza, 574 F.2d 1373, 1379 (5th Cir. 1978).[2] The threshold issue in this case is whether the marital communications privilege applies to communications made while the spouses, although still technically married, are living separate lives with no reasonable

---

2 Unlike the testimonial privilege, the communications privilege generally survives a terminated marriage. Pereira v. United States, 347 U.S. 1, 6 (1953). The unanimous rulings of other circuit courts, however, have held that marital communications made while the parties are legally married but permanently separated are not privileged. The adverse spousal testimonial privilege is sometimes referred to as spousal incompetency. It can be asserted only by the witness-spouse. The marital communication privilege, when available, can be asserted by a defendant to prevent his or her spouse from testifying concerning the communication and to exclude related evidence.

4

expectation of reconciliation (in other words, the couple is "permanently separated"). The appellant, while recognizing that no circuit court has so held, argues that this court, in a case of first impression, should "adopt a bright-line rule that the marital privilege lasts until the marriage formally ends" with a divorce decree.  The appellant's justification for this argument is that, "[t]his standard would avoid the intrusive inquiries that were posed to the appellant and her estranged husband in this case."  Appellant also argues that such a rule would "create predictability around the duration of the privilege" and would avoid discouraging "communication between couples exploring reconciliation."

The appellant's "bright-line" argument has not been accepted by any circuit court that has considered the availability of the marital communications privilege for a conversation taking place when the spouses are permanently separated. Further, contrary to the appellant's argument, other courts of appeal do not appear to "have struggled to fashion solutions to the problem of determining whether the marital privilege survives through separation."  In United States v. Byrd, 750 F.2d 585, 591-94 (7th Cir. 1984), the Seventh Circuit stated:

> "We refuse to extend the communications privilege to permanently separated couples on the theory that a guaranteed protection of confidentiality at this stage might save some troubled marriages.  Cf. Appeal of Malfitano, 633 F.2d 276, 278 (3d Cir. 1980) (declined to uphold "joint participants in a crime" exception to the testimonial privilege on the theory that the protection of the privilege

may tend "to help future integration of the spouse back into society"). Such a purpose is too speculative to justify a privilege that can severely hamper the truth finding process essential to a criminal trial. Moreover, this circuit has interpreted strictly the 'valid marriage' requirement in the testimonial privilege context. See United States v. Van Drunen, 501 F.2d 1393, 1397 (7th Cir.), cert. denied, 419 U.S. 1091, 95 S.Ct. 684, 41 L. Ed 2d 684 (1974); United States v. Clark, 712 F.2d 299, 302 (7th Cir. 1983) (both holding that the privilege does not protect communications that occur prior to marriage). See also United States v. Pensinger, 549 F.2d 1150, 1151 (8th Cir. 1977); Volianitis v. Immigration & Naturalization Service, 352 F.2d 766, 768 (9th Cir. 1965) (same). Cf. United States v. Lustig, 555 F.2d 737 (9th Cir. 1977), cert. denied, 434 U.S. 1045, 98 S.Ct. 889, 54 L. Ed. 2d 795 (1978) (neither the marital communications privilege nor the testimonial privilege applies where the marriage is not valid under state law, though the couple have lived together as man and wife for years). We, too, therefore, strictly interpret that portion of the privilege's requirement and hold that only communications that take place during a valid marriage between couples still cohabiting pursuant to that marriage are protected by the privilege.

Arguably, the fact of separation at the time of the communications rebuts the presumption of confidentiality that is a requirement of the exercise of the privilege. The presumption has been justified by courts on the grounds that communications within a marriage are intended to be private, yet are often made without a request for secrecy. Thus the difficult matter of proving the intent to keep the communications confidential is avoided by the presumption. See generally, State v. Smith, 384 A.2d 687, 692 (Me. 1978); Blau v. United States, 340 U.S. 332, 71 S. Ct. 301, 95 L. Ed. 306 (1951); note, supra, 56 IND. L.J. at 128-29, 133-34. We do not, however, base our holding today on the premise that communications made during a permanent separation lose the presumption of confidentiality. Such a holding would only involve courts in the difficult assessment of the intent of the communications, which the defendant would raise to reassert confidentiality once the presumption had been rebutted by the government's proof of the spouses' separated status. We decline to involve courts in this burdensome task. Our holding today is more

categorical and looks to the purpose of the privilege. We hold that society's interest in protecting the confidentiality of the relationships of permanently separated spouses is outweighed by the need to secure evidence in the search of truth that is the essence of a criminal trial, and that proof of permanent separated states at the time of the communication between the defendant and the defendant's spouse renders the communications privilege automatically inapplicable."

In United States v. Porter, 986 F.2d 1014, 1018-19 (6th Cir. 1993), the court

stated:

> "Courts have recognized certain exceptions to the [marital communications] privilege. . . . While the privilege is said to apply to confidential communications made during marriage, an exception to the privilege has been recognized by the Second, Seventh, Eighth and Ninth Circuits where the evidence consists of statements made by one spouse after the spouses have permanently separated, even though they may not have been legally divorced. In re Witness Before Grand Jury, 791 F.2d 234, 238-39 (2d Cir. 1986); United States v. Fulk, 816 F.2d 1202, 1205 (7th Cir. 1987); United States v. Byrd, 750 F.2d at 593; United States v. Frank, 869 F.2d 1177, 1179 (8th Cir.), cert. denied, 493 U.S. 839, 110 S. Ct. 121, 107 L. Ed. 2d 82 (1989); United States v. Roberson, 859 F.2d 1376, 1381 (9th Cir. 1988).
>
> . . . Therefore, joining all other circuits which have faced this issue we hold that the privilege is inapplicable where the spouses have permanently separated . . . ."

In United States v. Frank, 869 F.2d 1177, 1179 (8th Cir. 1989), the court

stated:

> "Finally, Frank argues the district court committed error in admitting evidence of Patricia's conversations with him because the conversations were confidential communications protected by the marital privilege. See Fed. R. Evid., 501. Frank contends the mere fact the couple was still legally married when the conversations

7

occurred entitled him to claim the privilege.  We disagree.

> We recognize that privileges are disfavored because they impede the search for truth.  See United States v. Nixon, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108-09, 41 L. Ed. 2d 1039 (1974).  Taking into account the Franks' permanent separation and their defunct marriage, we agree with the district court that Frank was not entitled to invoke the privilege.  See United States v. Roberson, 859 F.2d 1376, 1378-82 (9th Cir. 1988); United States v. Fulk, 816 F.2d 1202, 1204-05 (7th Cir. 1987); In re Witness Before Grand Jury, 791 F.2d 234, 238-39 (2d  Cir. 1986); United States v. Byrd, 750 F.2d 585, 589-94; (7th Cir. 1984).  The district court did not commit error in admitting this evidence."

In United States v. Roberson, 859 F.2d 1376, 1378-82 (9th Cir. 1988), the court stated:

> "As the Byrd court concluded as to permanently separated couples, society has little interest in protecting the confidentiality of separated couples whose marriage has failed by the time of the communication.  See Id. at 593.  The need for truth outweighs this interest. Id."

For similar holdings as to the permanent separation exception to the marital communication privilege see: United States v. Murphy, 65 F.3d 758, 761-62 (9th Cir. 1995); United States v. Jackson, 939 F.2d 625, 626 (8th Cir. 1991); and In re Witness Before Grand Jury, 791 F.2d 234, 236-39 (2d Cir. 1986).

We agree with the other circuits which have determined that the privilege is not available when the parties are permanently separated; that is, living separately with no reasonable expectation of reconciliation. Our decision is bolstered by the

8

factors generally applicable to privilege assertions, and more particularly, to marital privilege assertions. The general issue of evidentiary privilege in criminal cases is governed by the first sentence of Rule 501 of the Federal Rules of Evidence, which states: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The Supreme Court has held that privileges must be narrowly construed because they impede the search for truth. United States v. Nixon, 418 U.S. 683, 710 (1974); See also United States v. Chapman, 866 F.2d 1326, 1333 (11th Cir. 1989). While the confidentiality of communications during a valid marriage is presumed,[3] there is no reasonable basis for asserting the privilege when the marriage is "moribund."[4] If the spouses are permanently separated at the time of the communication, the reasonableness of the expectation of the spouse who asserts the privilege that the communication will be

---

3 Blan v. United States, 340 U.S. 332, 333 (1951).

4 Compare, United States v. Cameron, 556 F.2d 752, 756 (5th Cir. 1977) (spousal testimonial privilege).

9

kept confidential is diminished. There is also less societal interest in protecting the marital relationship of permanently separated spouses, especially when such protection would operate to "severely hamper the truth finding process essential to a criminal trial." Byrd, 750 F.2d at 593. The need for a search for truth in judicial proceedings weighs against construing the privilege any more broadly than necessary to achieve its ends. In re Grand Jury Proceedings, 664 F.2d 423, 429-30 (5th Cir. 1981, Unit B). In Cameron, supra, the old Fifth Circuit rejected, albeit in a testimonial privilege case, the argument that the privilege should be available in "moribund" marriages. 556 F.2d at 756. There is no reasonable distinction to be made in the case of a marital communication privilege assertion.

Having determined that the marital communication privilege is not available in cases of permanent separation prior to divorce, we next consider the factors that should be considered by district courts in determining whether there was a permanent separation at the time of the communication. A district court should focus upon the following three objective factors as especially important: (1) Was the couple cohabiting?; (2) if they were not cohabiting, how long had they been living apart?; and (3) had either spouse filed for divorce? A district court may, of course, consider other objective evidence of the parties' intent or lack of intent to reconcile. See Cameron, 556 F.2d at 756 (finding permanent separation in

testimonial privilege case where there was "a great disparity between the amount of time that the couple cohabited and the time that one of the other chose not to live together," and where one of the spouses already entered into "a more permanent living arrangement with another partner than with his spouse"). A court also may (not must) consider testimony by the spouses themselves regarding their subjective intent, but simply because one or both spouses testifies that the couple intended to stay married and that the communications at issue were thought by them to be protected, the communications need not be deemed privileged where objective factors undermine the credibility of that testimony.

The trial judge conducted a hearing outside the presence of the jury concerning the state of the Singletons' marital relationship at the time of the taped conversation. Once the Government opposed the allowance of the privilege, the burden of proof was on the appellant to prove by a preponderance of the evidence that she and Cedric were not permanently separated at the time of the subject communication. See In re Grand Jury Subpoena, 831 F.2d 225, 227 (11th Cir. 1987); and In re Certain Complaints Under Investigation, 783 F.2d 1488, 1520 (11th Cir. 1986). We review a district court's ruling on a claim of evidentiary privilege only for abuse of discretion. See, e.g., United States v. United Kingdom, 238 F.3d 1312, 1319 (11th Cir. 2001). Factual findings of a district court are

11

reviewed only for clear error.  See United States v. Kuku, 129 F.3d 1435, 1438 (11th Cir. 1997).  See also, Roberson, 859 F.2d at 1382 (applying clearly erroneous standard to this issue); City of Tuscaloosa v. Harcros Chem. Corp., 158 F.3d 548, 556 (11th Cir. 1999) ("The factual findings of the district court that underlie its decisions regarding the admissibility of the purported hearsay evidence -- such as its findings regarding whether a statement was made in furtherance of a conspiracy, or whether a particular document is a regular business record – are reviewed for clear error.")

The following evidence was presented to the district court: (1) the appellant alleged, in a divorce action complaint filed in September 1997, that Cedric had abandoned her in December 1996; (2) during the marriage Cedric had accused appellant of having affairs with her co-worker(s) and contractor(s) based on documents he found; (3) the appellant, at the time of the taped conversation, was living with Earl Davis, a co-worker; (4) the Singletons had a physical altercation shortly before their December 1996 separation; (5) after December 1996, Cedric lived with appellant's cousin, his own brother, and a former wife named Stephanie; (6) appellant stayed at Cedric's brother's house three or four times while Cedric was there; (7) Cedric spent one night, possibly two nights, at appellant's house after December 1996 (on one of the occasions, her boyfriend showed up; there was

12

an altercation, and Cedric left); (8) in 1997, there was another altercation involving appellant, Earl Davis, and Cedric, in which knives were drawn; (9) the appellant and Cedric continued to trade accusations of infidelity throughout the separation; (10) the spouses had tried marriage counseling around March 1997, and did not thereafter reconcile; (11) the spouses discussed reconciliation in the taped conversation, but appellant also told Cedric that she would shoot him if she had a gun, and several times during the taped conversation, appellant told Cedric that she hated him; (12) appellant also told Cedric, "It's 'cause I hate your ass and this is how I feel about you Cedric. I don't feel nothing nice for you any damn more;" and (13) Cedric testified that, at the time of the taped conversation, reconciliation was unlikely.

We conclude that the district court did not clearly err by finding that the Singletons were permanently separated at the time of the communication and that it did not abuse its discretion in denying the privilege to the appellant.

Testimony of Sonya White

The defendant did not object to the testimony of Sonya White, who, the Government has acknowledged, was ambivalent during her testimony. The jury could, of course, weigh her testimony. Even assuming, however, that the testimony should have been stricken, it was not plain error to fail to do so. Any

perceived equivocation arguably could have been weighed in appellant's favor. Further, the evidence, including appellant's own testimony, strongly suggested guilt. There was certainly neither "egregious error," nor any error that would result in a "miscarriage of justice." United States v. Williford, 764 F.2d 1493, 1502 (11th Cir. 1985).

## Summary

We reject appellant's argument that we should establish a bright-line rule of termination of marriage before the marital communication privilege can be denied. We conclude that the district court did not abuse its discretion in concluding that the parties were permanently separated and that appellant was not entitled to assert the marital communications privilege. Finally, we conclude that there was no error in admitting, or in failing to strike, the testimony of Sonya White.

The judgment of the district court is AFFIRMED.