**In re GRAND JURY PROCEEDINGS (84-5).**

**Jane EMO, Petitioner-Witness,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 85-1313.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 22, 1985.

Decided Nov. 29, 1985.

R. Christopher Locke, Asst. U.S. Atty., San Francisco, Cal., for respondent-appellee.

Michael Mendelson, Terence Hallinan, Mary Hughes, San Francisco, Cal., for petitioner-witness.

Before FLETCHER, FERGUSON, and BEEZER, Circuit Judges.

PER CURIAM:

Jane Emo appeals the district court's order holding her in civil contempt for refusing to testify before the grand jury about any matters pertaining to her husband, Jeffrey Schmitz. She asserts a marital testimonial privilege, which entitles a witness not to testify against a spouse in grand jury proceedings. *See In re Grand Jury Investigation (Hipes v. United States),* 603 F.2d 786 (9th Cir.1979).

I.

Jane Emo and Jeffrey Schmitz had lived together for two years when, in July 1985, federal agents questioned Emo about Schmitz. Soon after, she was served with a subpoena to appear before a grand jury. On August 3, 1985 Emo and Schmitz entered into a valid marriage. When Emo appeared before the grand jury on August 8, she asserted the marital privilege against adverse spousal testimony.

The government applied to the district court for the Northern District of California to compel Emo to testify against her husband, contending that the marriage was a sham. At the hearing on the motion, the government did not dispute Emo's declarations that the two lived together for two years, that the marriage was the natural progression of the couple's love and affection for each other, and that they intended to live together as husband and wife. The

only evidence the government relied on was that the marriage occurred between the service of the subpoena and the scheduled date for testifying.

The district court found that the marriage was a sham because its primary purpose was to assert the marital privilege. The district court entered an order compelling Emo to testify, which she appealed. This court dismissed the appeal for lack of jurisdiction. On October 31, 1985 Emo again asserted the marital privilege before the grand jury. The district court found Emo in civil contempt. Emo appeals this order.

### II.

We review the district court's finding of a sham marriage for clear error. *United States v. Saniti,* 604 F.2d 603, 604 (9th Cir.1979). We hold that the record does not support the district court's finding, and we reverse.

The Ninth Circuit recognizes a sham marriage exception to the marital privilege of not having to testify against a spouse. *Id.* In *Saniti,* we upheld the district court's finding of a sham marriage based on the facts of the case. *Saniti* did not explain what those facts were, however, and therefore gives us no guidance on what constitutes a sham marriage.

The Tenth Circuit found a sham marriage in *United States v. Apodaca,* 522 F.2d 568 (10th Cir.1975). In that case, the witness was a key prosecution witness who gave damaging testimony at several pretrial proceedings. The defendant had threatened her and attempted to coerce her not to testify. He was also under a court order not to contact her. He violated the order and, on the eve of the trial, they got married. The court found the marriage was a sham because no evidence showed a relationship between them prior to the marriage, although they knew each other, or an intention to live together as husband and wife. Even in immigration cases, which have developed a fairly harsh sham marriage doctrine, the major test is whether the couple intended to live together as

husband and wife. *See Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

In this case the only evidence to support the finding was the timing of the marriage. The timing of a marriage will always be a factor; with a different timing the controversy would not arise. But timing is only one of the factors. All the other evidence shows that the marriage was entered into in good faith, and they plan to continue their marital relationship.

 We therefore hold that mere suspicious timing of a marriage does not support a finding of a sham marriage, especially when other evidence, such as living together or intentions of living together as husband and wife, indicates that the marriage was entered into in good faith. The district court order finding Jane Emo in civil contempt is therefore REVERSED.