34 F.3d 1073
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ronald V. PIPER, Plaintiff-Appellant,
v.
ALASKA AIRLINES, INC., a corporation; Patrick Partridge;
Jane Doe Partridge; Geraldine Carolan; Joe Doe
Carolan, et al., Defendants-Appellees.
 No. 93-35575.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 2, 1994.*
Decided Aug. 12, 1994.
 
 Before: WRIGHT, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Piper appeals the district court's grant of summary judgment for Alaska Airlines on his claims of race discrimination and various state law tort claims. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm in part, reverse in part, and remand in part.
 
 I. BACKGROUND
 
 3
 Piper was a customer service agent for Alaska Airlines (Alaska). In May 1990, Alaska began investigating Piper for alleged misconduct. Partridge, Alaska's corporate security representative, and Carolan, its litigation counsel, directed the investigation. In June 1990 Alaska fired Piper, claiming he violated numerous company rules, made inappropriate advances toward a young passenger, and sexually assaulted several coworkers.
 
 
 4
 Partridge and Carolan also gave information to local police about Piper's sexual misconduct and assaults. County prosecutors filed criminal charges against him, based in part on that information. The jury found him not guilty on one rape count and was unable to reach a verdict on the second. The prosecutor dismissed two assault charges.
 
 
 5
 Piper filed a charge of race discrimination with the EEOC and the state Human Rights Commission. Both issued "no cause" determinations. More than a year later, Piper sued Alaska in state court alleging race discrimination in violation of Title VII, 42 U.S.C. Sec. 1983 and RCW 49.60.180. He also filed several state tort claims.
 
 
 6
 Alaska removed to federal court and moved for summary judgment. In response, Piper submitted a declaration by Mirajkar, Carolan's husband.[1] In it, he said that Carolan made racial comments about Piper and another black Alaska employee. The district court struck the declaration on the authority of RCW 5.60.060, Washington's marital privilege statute.
 
 
 7
 The court granted summary judgment for Alaska on Piper's Section 1983 claim and his state discrimination claim, finding that Piper failed to show a prima facie case of discriminatory intent. It granted summary judgment for Alaska on Piper's Title VII claim, finding that it was time-barred. Finally, it gave summary judgment for Alaska on Piper's state law tort claims, finding that the Railway Labor Act (RLA), 45 U.S.C. Sec. 151, preempted them. Piper appeals.
 
 II. ANALYSIS
 
 8
 We review de novo the district court's grant of summary judgment. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. We also review de novo whether a plaintiff has shown a prima facie case of discrimination. Atonio v. Wards Cove Packing Co., 827 F.2d 439, 443 (9th Cir.1987), rev'd on other grounds, 490 U.S. 642 (1989).
 
 
 9
 A. Piper's Title VII claim was time-barred.
 
 
 10
 When the Equal Employment Opportunity Commission (EEOC) dismisses a claim, it is required to notify claimant and to inform claimant that she has 90 days to bring a civil action. 42 U.S.C. Sec. 2000e5(f)(1) (1988). The requirement for filing a Title VII civil action within 90 days from the date EEOC dismisses a claim constitutes a statute of limitations. If claimant fails to file within 90-day period, the action is barred accordingly.
 
 
 11
 Scholar v. Pacific Bell, 963 F.2d 264, 266-67 (9th Cir.1992) (citations and footnote omitted).
 
 
 12
 Piper concedes he did not file until more than one year after the EEOC's right-to-sue notice. He argues that Alaska waived its right to object to the timeliness of his action and "acknowledged and validated [his] federal cause of action under Title VII" when it removed the case. His argument lacks merit.
 
 
 13
 The district court reasoned correctly that Alaska did not waive its rights when it removed the case under 28 U.S.C. Secs. 1441 and 1446. The limitations period in Title VII was part of the federal question before the district court. And Alaska raised the defense in its answer.
 
 B. The Mirajkar Declaration
 
 14
 The district court struck the Mirajkar declaration on the basis of RCW 5.60.060, the Washington marital privilege statute. It also said that the declaration violated a restraining order entered by the Superior Court in the Carolan-Mirajkar dissolution action. Finally, it said that "although Washington's marital privilege law is not an appropriate basis to strike the declaration in the context of Piper's federal Sec. 1983 claim, see Fed.R.Evid. 501, the restraining order entered by the Superior Court does provide such a basis."
 
 
 15
 We agree with the result reached by the district court. But we have never decided whether federal or state privilege law controls in a case involving both federal and pendent state law claims. We need not decide this issue, however, because admitting the declaration would have violated both the federal and state marital communications privileges.[2]
 
 
 16
 The federal privilege protects confidential communications between husband and wife made during a valid marriage. It may be asserted even after the marriage is dissolved. In re Grand Jury Investigation of Hugle, 754 F.2d 863, 865 (9th Cir.1985).
 
 
 17
 The confines of the marital communications privilege are easy to describe. First, the privilege extends only to words or acts intended as communication to the other spouse. Second, it covers only those communications made during a valid marriage, unless the couple had irreconcilably separated. Third, the privilege applies only to those marital communications which are confidential.
 
 
 18
 United States v. Marashi, 913 F.2d 724, 729-30 (9th Cir.1990) (citations omitted).
 
 
 19
 Piper argued that the privilege did not apply because Carolan married Mirajkar only to increase her opportunity to adopt an Indian child.[3] He says that the policies behind the privilege do not apply because there was never a genuine marital relationship.
 
 
 20
 The marital privilege balances society's interest in the search for truth with society's interest in the confidential marital relationship. United States v. Roberson, 859 F.2d 1376, 1380 (9th Cir.1988). In Roberson, we said the "inquiry for the purpose of balancing interests should address the interest society has in preserving the confidentiality of marital partners generally. It does not concern the confidentiality of the couple before the court." Id. at 1380 (emphasis added).[4] We also noted that a "totally unrestricted approach [to the application of the privilege to failing marriages] may involve district judges in difficult and sometimes inappropriate inquiries."[5]
 
 
 21
 Following Roberson, we hold that courts should not decide if marriages are sufficiently genuine or traditional to merit application of the marital communications privilege. All that is necessary is a valid marriage, unless the couple has irreconcilably separated.
 
 
 22
 Carolan's reasons for marrying Mirajkar were not conventional. But Piper does not deny that Carolan and Mirajkar were married in Idaho in August 1990.[6] And there is also evidence that they lived together from that date until January 1992 and were romantically involved. The federal marital communications privilege would bar the Mirajkar declaration because the communication was made during a valid marriage and Carolan and Mirajkar were not separated.
 
 
 23
 The Washington privilege would also bar the declaration. It applies to a valid, existing marriage, even if such a marriage is in name only. State v. Cohen, 576 P.2d 933, 938 (Wash.App.1978) (citing State v. Grasser, 374 P.2d 149 (Wash.1962)). The privilege benefits marital relationships by enabling communication between spouses without fear of disclosure. Breimon v. General Motors Corp., 509 P.2d 398, 402 (Wash.App.1973) (citing State v. Thorne, 260 P.2d 331 (Wash.1953)). It protects "all confidential exchanges and is intended to encourage mutual understanding and trust." State v. Bonaparte, 660 P.2d 334, 336 (Wash.App.1983).
 
 
 24
 C. Piper did not establish a prima facie case of discrimination.
 
 
 25
 Under RCW 49.60.180 and Title VII, the plaintiff has the initial burden of showing a prima facie case of racial discrimination. Kastanis v. Educational Emp. Credit Union, 859 P.2d 26, 30-31 (Wash.1993) (adopting federal standard for establishing prima facie case of discrimination under RCW 49.60.180); Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1110 (9th Cir.1991) (Title VII). To show a prima facie case, the "plaintiff must offer evidence that gives rise to an inference of unlawful discrimination. The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is very little." Sischo-Nownejad, 934 F.2d at 1110-11 (quotation marks and citations omitted).
 
 
 26
 The district court correctly reasoned that Piper failed to make this showing. The only evidence Piper offers of discriminatory intent is the Mirajkar declaration.[7] The marital communications privilege barred the court from considering that declaration.
 
 
 27
 D. Section 1983.
 
 
 28
 The district court held that Partridge and Carolan did not act under color of state law. See 42 U.S.C. Sec. 1983. In the alternative, it held that Piper's failure to show a prima facie case of discriminatory intent warranted dismissal.
 
 
 29
 We do not decide whether the district court erred in finding that the Alaska employees were not acting under color of state law. The gist of Piper's Sec. 1983 claim is racial discrimination. "In order to prove discrimination in violation of Sec. 1983, a plaintiff must demonstrate that the defendants acted with the intent to discriminate." Sischo-Nownejad, 934 F.2d at 1112. Piper failed to establish a prima facie case of discrimination. Id. at 1112-13 (plaintiff who fails to establish intentional discrimination for purposes of Title VII also fails to establish intentional discrimination for purposes of Sec. 1983).
 
 
 30
 E. Railway Labor Act preemption.
 
 
 31
 The district court held that the RLA preempted Piper's state tort claims. It reasoned that
 
 
 32
 the RLA preempts state tort claims ... where the alleged tortious activity is arguably governed by the collective bargaining agreement ... and where the gravamen of the complaint is wrongful discharge.
 
 
 33
 Order at 5, quoting Grote v. Trans World Airlines, Inc., 905 F.2d 1307, 1309 (9th Cir.1990), cert. denied, 498 U.S. 958 (1990). It also said that state claims are preempted if they have "a 'not obviously insubstantial' relationship to the labor contract." Id., quoting Melanson v. United Air Lines, Inc., 931 F.2d 558, 562 (9th Cir.), cert. denied, 112 S.Ct. 189 (1991). Finally, it noted that "[t]he Ninth Circuit has made it clear that RLA preemption is broader than preemption under Sec. 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185." Id., citing Grote, 905 F.2d at 1309.
 
 
 34
 The Supreme Court recently adopted the preemption standard for Sec. 301 of the LMRA to resolve RLA preemption claims. Hawaiian Airlines v. Norris, 114 S.Ct. 2239, 2247 (1994). At our request, counsel have provided supplemental briefs, discussing the application here of the Court's decision. Under its standard, the RLA does not preempt the state law claim if it can be resolved without interpreting the collective bargaining agreement. Id., citing Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 408-09 (1988). "[P]urely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." Hawaiian Airlines, 114 S.Ct. at 2248 (citations and quotation marks omitted).
 
 
 35
 Hawaiian Airlines implicitly overrules the RLA preemption standard used by this court and the district court in this case. The district court could not have foreseen the result in Hawaiian Airlines. In fairness to that court, we must reverse summary judgment for Alaska on Piper's state law tort claims and remand to the district court to determine whether they require interpretation of Alaska's collective bargaining agreement.[8]
 
 III. CONCLUSION
 
 36
 We affirm summary judgment for Alaska on Piper's claims of race discrimination under Title VII, 42 U.S.C. Sec. 1983 and RCW 49.60.180. We reverse summary judgment for Alaska on Piper's state law tort claims and remand for further findings in light of Hawaiian Airlines v. Norris.
 
 
 37
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The dissolution of the Carolan-Mirajkar marriage was pending in state court when the district court entered summary judgment
 
 
 [2]
 "We may affirm on any ground fairly supported by the record." Lee v. United States, 809 F.2d 1406, 1408 (9th Cir.1987), cert. denied, 484 U.S. 1041 (1988)
 
 
 [3]
 He relies on statements Carolan made during the course of the dissolution proceeding. She said that she was not married to Mirajkar "in fact," and that she and Mirajkar had never held themselves out to be married. At her deposition in this case, she admitted that the only reason she married Mirajkar was to increase her chances of adopting an Indian child
 
 
 [4]
 The issue in Roberson was whether the privilege applied to failing marriages. We held that the privilege does not apply if the district court finds that 1) the communication was made while the couple was separated, and 2) the marriage was irreconcilable at that time. Id. at 1381. We distinguished marriages that were merely estranged, i.e., distant, unfriendly or indifferent. Id
 
 
 [5]
 There is a sham marriage exception to the related marital facts privilege. In re Grand Jury Proceedings, 777 F.2d 508, 509 (9th Cir.1985). That privilege prohibits one spouse from testifying against another during the length of the marriage. Marashi, 913 F.2d at 729. But unlike the marital communications privilege, the marital facts privilege "looks forward with reference to the one marriage at hand and advances that privacy interest." Roberson, 859 F.2d at 1380
 
 
 [6]
 The need for a dissolution proceeding makes the validity of their marriage self-evident
 
 
 [7]
 Piper virtually concedes this, saying that "if this court reverses the district court's decision on the Mirajkar declaration and considers it, Piper will have shown sufficient evidence to defeat summary judgment on his Sec. 1983 claim." He also says that "the district court has acknowledged that had the Mirajkar declaration not been stricken, Piper would have evidence of discriminatory intent. Piper will thus meet his burden of showing a prima facie case of race discrimination if the Mirajkar declaration is allowed."
 
 
 [8]
 Piper argues that the RLA does not preempt the state law claims and that we should order the district court to remand them to state court. Even if the district court finds that the RLA does not preempt the state law claims, it would be within its discretion to exercise supplemental jurisdiction over those claims. See 28 U.S.C. Sec. 1367(c)(3); Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., 911 F.2d 242, 247 (9th Cir.1990). However, we do agree that remand is usually the proper approach. Id