FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> DMITRY FOMICHEV, *Defendant-Appellant.* | No. 16-50227 <br><br> D.C. No. 2:13-cr-00185-SVW-1 <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted August 10, 2017
Submission Vacated January 9, 2018
Resubmitted August 8, 2018
Pasadena, California

Filed August 8, 2018

Before:  Kim McLane Wardlaw,[*] Morgan Christen,
and John B. Owens,[**] Circuit Judges.

Opinion by Judge Christen

---

**SUMMARY**[***]

---

**Criminal Law**

The panel vacated the district court's order denying a defendant's motion to suppress recordings of his conversations with his wife and his wife's testimony describing those conversations, in a case in which the defendant was convicted of four counts of making false statements on immigration documents in violation of 18 U.S.C. §§ 1546(a) and 1001.

The panel held that the district court erred by extending the sham marriage exception, which has been applied to the spousal testimonial privilege, to the marital communications privilege.

---

[*] Following Judge Kozinski's retirement, Judge Wardlaw was drawn by lot to replace him.  Ninth Circuit General Order 3.2.h.  Judge Wardlaw has read the briefs, reviewed the record, and listened to oral argument.

[**] Judge Owens was drawn to replace Judge Reinhardt on the panel following Judge Reinhardt's death.  Judge Owens has read the briefs, reviewed the record, and listened to oral argument.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Because the district court did not make a finding about whether the marriage was irreconcilable when the IRS recorded the defendant's statements, which would render the marital communications privilege inapplicable, the panel remanded for the district court to rule on irreconcilability.

The panel held that sufficient evidence supported the jury's finding that the defendant understood the documents he signed.

## COUNSEL

Daniel Saunders (argued), Kasowitz Benson Torres LLP, Los Angeles, California, for Defendant-Appellant.

Christopher C. Kendall (argued), Assistant United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; Sandra R. Brown, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Dimitry Fomichev appeals his jury conviction for four counts of making false statements on immigration documents in violation of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001. We have jurisdiction under 28 U.S.C. § 1291. We vacate the district court's order denying Fomichev's motion to suppress and remand.

## BACKGROUND

Fomichev was born in Russia and came to the United States in 2003 on a student visa. He met Svetlana Pogosyan in 2006, and they married later that year. In 2007, Pogosyan applied for an alien relative visa for Fomichev, and he applied to adjust his immigration status. The United States Department of Homeland Security found the marriage bona fide, approved the visa, and granted Fomichev conditional residence. Two years later, with counsel, Fomichev and Pogosyan petitioned to remove the conditions on Fomichev's residence, indicating a shared address, and certifying that the petition and evidence were true and correct and that the marriage was entered in accordance with the laws of California and not for the purpose of procuring an immigration benefit. The couple attached copies of their jointly filed tax returns to the petition.

In 2010, agents of the Internal Revenue Service approached Pogosyan, and she agreed to meet with them at a coffee shop. Pogosyan gave conflicting answers to the agents' initial questions about where she and Fomichev lived and about their tax returns, so the agents cautioned her that

lying to federal agents is a felony and that she could be culpable and owe back taxes for false returns. At that point, Pogosyan stated she wanted to "come clean" and tell the agents the truth. Pogosyan said that she agreed to marry Fomichev so that he could secure U.S. citizenship, and that he agreed to pay her rent in exchange. Pogosyan then assisted the agents' investigation by recording several telephone calls with Fomichev and wearing a concealed recording device during an in-person meeting with him. In these recorded conversations, Fomichev expressed concern regarding his immigration status, saying, among other things, "do not set us up, me and you, in regards to the immigration as no one knows, . . . no one can prove anything."

In January 2011, Pogosyan testified before the grand jury that Fomichev agreed to provide housing for her in return for the marriage, that they never lived together, that the marriage was not intended to last more than a couple of years, and that Fomichev needed to marry a U.S. citizen to obtain citizenship.

In October 2012, Pogosyan and Fomichev filed for a divorce in state court. Their divorce was finalized in December 2012.

**PROCEDURAL BACKGROUND**

In March 2013, the government charged Fomichev with three counts of subscribing to false income tax returns based on his 2006, 2007, and 2008 returns; two counts of making false statements to the United States based on certifying that his marriage was not for the purpose of procuring an immigration benefit; and two counts of making false

statements in immigration documents based on the same certifications.

Fomichev filed a motion to suppress the recordings of his conversations with Pogosyan and Pogosyan's testimony describing those conversations. He argued that this evidence was entitled to protection pursuant to the marital communications privilege because the statements were made while Fomichev and Pogosyan were married. He also argued that the admission of this evidence violated the Fourth Amendment. The government opposed, arguing that Fomichev was not entitled to invoke the marital communications privilege because Fomichev married Pogosyan for fraudulent purposes, and that Fomichev had no expectation of privacy in the communications because his wife had agreed to act as a government informant.

After considering the arguments, the district court noted the parties' agreement that the marital communications privilege would protect the challenged evidence from being introduced at trial "unless a recognized exception to the privilege applie[d]" because the evidence the government sought to introduce "constitute[d] (1) words intended as communication to the other spouse, (2) made during the course of a valid marriage, and (3) intended to be confidential." The district court acknowledged that although courts have regularly applied the sham marriage exception to the spousal testimonial privilege, it had "found no cited case where the sham marriage exception ha[d] been applied to the marital communications privilege." Indeed, the court reasoned, "as the communications occurred more than four years after Fomichev and Pogosyan married, it cannot be said that they married for the purpose of invoking any marital privilege." The court also recognized that our cases caution

against what the district court described as engaging in "the business of opining on which reasons for marriage are legitimate or deserving of marital privileges and which ones are not." Nevertheless, the district court determined there was no principled reason not to extend the sham marriage exception to the marital communications privilege, and it did so. The court found that: (1) Fomichev and Pogosyan married in 2006; (2) the initial plan was to find a place to live together; (3) after looking at about twenty-five options, the couple signed a lease for a residence in White Oak where Fomichev was supposed to live but never did; (4) the couple did not reside together at any time; and (5) the couple never slept in the same bed or engaged in sexual relations. The court concluded, "[o]n the particular facts of th[e] case, the policy interests behind the marital communications privilege would not be advanced, and would surely be outweighed by the competing societal interest for truth and the administration of justice."

The district court also rejected Fomichev's Fourth Amendment argument. The court recognized that we have not decided whether the law recognizes an expectation of privacy when one spouse consents to electronic monitoring, and it relied on the Supreme Court authority generally establishing that individuals have no reasonable expectation of privacy in the statements they make to government informants.

The court denied Fomichev's motion to suppress, evidence of Fomichev's marital communications was admitted at trial, and the jury convicted Fomichev of four counts of making false statements or misrepresentations to the United States government in violation of 18 U.S.C.

§ 1546(a) and 18 U.S.C. § 1001.[1]  The district court sentenced Fomichev to three years of probation, and Fomichev timely appealed.

## STANDARDS OF REVIEW

We review de novo an order denying a motion to suppress, *see United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007), and legal conclusions regarding the marital communications privilege, *see United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006).  We review challenges to the admission of evidence for an abuse of discretion, *see United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990), and we make decisions on the sufficiency of the evidence de novo, *see United States v. Garrison*, 888 F.3d 1057, 1064 (9th Cir. 2018).

## DISCUSSION

Fomichev's challenge to the district court's ruling on his motion to suppress primarily relies on the marital communications privilege, arguing that the district court erred by admitting statements he made to Pogosyan in confidence during the course of their legally valid marriage.  The government urges us to affirm the district court's order denying Fomichev's motion to suppress on one of three grounds: by extending the sham marriage exception, by deeming the marriage irreconcilable at the time the contested statements were made, or by finding Fomichev's statements to Pogosyan were made in furtherance of a joint criminal

---

[1] The government moved to dismiss the tax count related to the 2008 return before trial, and the court later granted Fomichev's motion for judgment of acquittal on the remaining tax counts.

activity. The last argument is raised for the first time on appeal, so we do not address it. *See United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017).[2] Fomichev separately argues that the admission of the challenged evidence violated the Fourth Amendment. The government counters that Fomichev had no expectation of privacy in the statements.

### 1. The District Court Erred by Extending the Sham Marriage Exception to the Marital Communications Privilege.

It is not disputed that Fomichev and Pogosyan were married pursuant to California law from July 2006 to December 2012. The government argues that even though Fomichev and Pogosyan had been married for four years at the time the subject statements were recorded, the marriage was never valid for purposes of invoking a federal privilege because Fomichev and Pogosyan had "no close emotional, social, or cultural ties." The government recognizes that we have applied the sham marriage exception only to the spousal testimonial privilege, but it argues that there is no principled reason not to extend the exception to the marital communications privilege, and that allowing a defendant to hide behind the marital communications privilege while engaged in marriage fraud fails to balance the privilege

---

[2] In the trial court, the government argued Fomichev was not entitled to invoke the marital communications privilege because Fomichev's conduct amounted to witness tampering, but it failed to cite to any authority supporting such an exception. On appeal, the government argues the well-recognized joint criminal activity exception—"the marital communications privilege does not apply to statements made in furtherance of joint criminal activity." *United States v. Montgomery*, 384 F.3d 1050, 1060 (9th Cir. 2004) (quoting *Marashi*, 913 F.2d at 731).

against society's strong interest in the administration of justice. We are not persuaded that the exception should be extended.

Federal Rule of Evidence 501 provides that, except as otherwise required by the Constitution, federal statute, or Supreme Court rule, the privilege of a witness shall be governed by the principles of common law as interpreted by United States courts "in the light of reason and experience." Fed. R. Evid. 501. Our case law recognizes two privileges that arise from a marital relationship: the marital communications privilege and the spousal testimonial privilege. "Both privileges depend on the existence of a valid marriage, as determined by state law." *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977).

The marital communications privilege protects statements or actions that are intended as confidential communications between spouses, made during the existence of a valid marriage, *United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005), unless the marriage had become irreconcilable when the statements were made. *See United States v. Murphy*, 65 F.3d 758, 761 (9th Cir. 1995) ("Separation and irreconcilability are questions of fact determined by the district court."). Either spouse may invoke the marital communications privilege and the protection it affords to statements made during a marriage survives the marriage. *See Lustig*, 555 F.2d at 747. The privilege "exists to insure that spouses generally feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Roberson*, 859 F.2d 1376, 1380 (9th Cir. 1988); *see United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992) (noting the purpose of the privilege is to "protect[] the integrity of marriage[] and

ensure[] that spouses freely communicate with one another"). Because marital communications are "presumptively confidential[,] the government has the burden of demonstrating that they are not." *Marashi*, 913 F.2d at 730.

The spousal testimonial privilege, on the other hand, prohibits one spouse from testifying against the other in criminal cases during the course of their marriage, and "the witness-spouse alone has a privilege to refuse to testify adversely." *Trammel v. United States*, 445 U.S. 40, 53 (1980). The spousal testimonial privilege ends when a marriage ends. *Marashi*, 913 F.2d at 729. The sham marriage exception to the spousal testimonial privilege is a narrow exception that has typically arisen when there has been a close temporal proximity between the date of a marriage and the date when a witness-spouse has been expected to testify. *See In re Grand Jury Proceedings (84-5)*, 777 F.2d 508, 509 (9th Cir. 1985) (per curiam) (considering applicability of sham marriage exception because couple married on the eve of trial); *United States v. Apodaca*, 522 F.2d 568, 571 (10th Cir. 1975) (holding the spousal testimonial privilege could not be invoked by a witness-spouse because she and the defendant "were married only three days before trial"). We have affirmed a district court's ruling that the spousal testimonial privilege was not available to a witness-spouse because "the purpose of the marriage was for . . . invoking the [spousal testimonial] privilege." *United States v. Saniti*, 604 F.2d 603, 604 & n.1 (9th Cir. 1979) (per curiam).

There is no question that the government is free to try to prove that Fomichev falsely certified that he did not marry for the purpose of obtaining an immigration benefit. *See Nakamoto v. Ashcroft*, 363 F.3d 874, 881–83 (9th Cir. 2004).

The question before us is limited to whether the government should be allowed to use Fomichev's private marital communications in order to prove its case.

The marital communications privilege has long been recognized in our jurisprudence, *see Wolfle v. United States*, 291 U.S. 7, 14 (1934), and there are good reasons it has withstood the test of time. Like the physician-patient and clergy-penitent privileges, the marital communications privilege recognizes that society has an enormously strong interest in preserving a particular social institution—here, the institution of marriage. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2593–94, 2601–02 (2015). We afford special protection to private communications exchanged in the confines of each of these relationships because the relationships are uniquely important, and because the law has long recognized that they will be compromised if spouses, patients, and penitents are not secure in the knowledge that their communications will be kept confidential. *See Trammel*, 445 U.S. at 51 ("The privileges between priest and penitent, attorney and client, and physician and patient . . . . are rooted in the imperative need for confidence and trust."). The law safeguards the confidentiality of marital communications not because it fails to recognize the risk that such a privilege could be misused to obstruct justice, but because, as we explained in *Griffin*, privacy is "regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." 440 F.3d at 1142 (quoting *Wolfle*, 291 U.S. at 14).

We have never applied the sham marriage exception to the marital communications privilege, and doing so would expand the limited application the exception receives in the

context of the spousal testimonial privilege.[3] The government bears the burden to persuade us that the sham marriage exception should be extended, and it has offered no convincing reason to modify this longstanding rule. We are particularly disinclined to upset this precedent when it appears that the parties mistakenly focused on litigating exceptions to the marital communications privilege, without recognizing that it only extends to communications made during the marriage or until a marriage becomes irreconcilable. *See Marashi*, 913 F.2d at 729–30. Irreconcilability was not the focus of the government's argument in the district court, but the government did advance this argument in the district court and it continues to argue this point on appeal. Because the district court did not make a finding about whether the subject marriage was irreconcilable when the IRS recorded Fomichev's statements, we remand for the district court to rule on irreconcilability.

---

[3] We recognize that people marry for many different religious, cultural, and social reasons. Marriages that are entered into for practical reasons may ripen into loving relationships, and happily *un*married couples may decide to marry for estate planning purposes, to secure health benefits, or to increase their chances of successfully adopting children, *Piper v. Alaska Airlines*, *Inc.*, No. 93-35575, 1994 WL 424292 at *2–3 (9th Cir. Aug. 12, 1994). *See United States v. Orellana-Blanco*, 294 F.3d 1143, 1151 (9th Cir. 2002) ("Just as marriages for money, hardly a novelty, or marriages among princes and princesses for reasons of state may be genuine and not sham marriages, so may marriages for green cards be genuine."). Under our case law, determining the applicability of the sham marriage exception requires a limited inquiry into whether parties married for the purpose of invoking the testimonial privilege. This is consistent with our previous admonitions that courts should be wary of passing judgment on parties' personal reasons for marrying. *See Roberson*, 859 F.2d at 1380 (observing that adjudicating the applicability of marital privileges can "involve district judges in difficult and sometimes inappropriate inquiries").

**2. Sufficient Evidence Supported the Jury's Finding that Fomichev Understood the Documents He Signed.**

Fomichev argues that his convictions must be vacated because there was insufficient evidence that he knew he was making false statements. Specifically, Fomichev argues the evidence offered was insufficient to show that he had the English fluency to understand the documents he signed. We disagree.

"When faced with a sufficiency of the evidence challenge, we must consider the evidence presented at trial in the light most favorable to the prosecution and then must determine whether the evidence is sufficient to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *Garrison*, 888 F.3d at 1063 (internal quotation marks omitted). Fomichev had conversations, however simple, with the manager of his apartment building, and his accounting instructor and friend testified that Fomichev had an extensive vocabulary and average writing skills, as demonstrated by his handwritten affidavit, in English, withdrawing one of his applications. The jury had sufficient evidence to find that Fomichev's English competency was such that he understood what his signature certified.

**3. We Decline to Reach Fomichev's Remaining Arguments.**

The district court rejected Fomichev's argument that the admission of his statements ran afoul of the Fourth Amendment, ruling that Fomichev had no expectation of privacy because his wife served as a government informant.

The district court correctly observed that our circuit has not yet decided whether the law recognizes a reasonable expectation of privacy in marital communications where, as here, one spouse consents to monitoring. We decline to reach this issue until the district court decides whether the marriage was irreconcilable as of the time Fomichev's statements were recorded. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (internal quotation marks omitted).

We also decline to reach Fomichev's argument that the district court abused its discretion by denying a mistrial after striking prejudicial tax evasion evidence without a sufficiently forceful limiting instruction. This prejudice analysis may differ on remand, depending on the district court's ruling on irreconcilability. If the district court decides on remand that Fomichev's statements were improperly admitted, its ruling on the motion for a new trial can be revisited.

## CONCLUSION

The district court erroneously extended the sham marriage exception to the marital communications privilege. We vacate the district court's denial of Fomichev's motion to suppress. On remand, the district court shall decide whether the marriage was irreconcilable as of the time the challenged statements were made. In light of this decision, we vacate the district court's Fourth Amendment ruling and its denial of

Fomichev's motion for new trial, both of which may be reconsidered on remand.

**VACATED** and **REMANDED.**